Commonwealth *v.* Flex, Appellant.

Argued December 15, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*James A. Ashton,* for appellant.

*Edwin J. Martin,* Assistant District Attorney, with him *Charles B. Watkins,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., April 12, 1967:

Emido Donald Flex appeals from judgments of sentence imposed after his conviction by a jury of charges of blackmail, conspiracy to blackmail and carrying a concealed deadly weapon. On the blackmail and conspiracy charges the appellant was indicted jointly with

one Albert Zeid. Zeid was also indicted on two counts of violating the Uniform Firearms Act. The appellant and Zeid were tried together on all charges after appellant's motion for a severance was refused. Following his conviction on all counts the appellant requested a new trial which was refused.

Excluding the testimony elicited by the Commonwealth on cross-examination of its own witnesses since such testimony is for impeachment only, the evidence before the jury showed the following: Paul Keyes and Ralph Krivanek, the alleged victims of the blackmail, were car salesmen in Pittsburgh. In the early fall of 1964 they made two trips to Las Vegas, Nevada. They returned from the second trip owing more than $12,000 to two gambling establishments, the Thunderbird and Tropicana hotels. On October 17, 1964, the day after their return from the second trip to Las Vegas, they were approached at a Pittsburgh bar by appellant, his co-defendant, Zeid, and a third man. Keyes and Krivanek had never met any of the three before. Appellant, Zeid and the third man confronted Keyes and Krivanek with the fact that they owed money in Las Vegas and asked if they intended to pay the debt. Appellant and his two friends then indicated they might "help" Keyes and Krivanek pay the debt since they had some contacts in Las Vegas. At about 1 a.m. (the conversation began sometime after 10 p.m.) Keyes drove 15 miles to his home with Flex, picked up $2,000 in cash which he gave to Flex, and then returned to the bar. There was no receipt for the money, no arrangement as to which debt it would be applied to, and no indication the money was ever sent to Las Vegas. A second meeting was arranged for the following Tuesday, October 20th, to which meeting Krivanek was told to bring as much money as possible. After appellant, Zeid and the third man left, Keyes and Krivanek attempted to reach Lt. DeRoy, a Pittsburgh police officer

they knew. They were unsuccessful and went home about 3 or 4 a.m., but reached Lt. DeRoy later that day. On October 18th Keyes signed and swore to a criminal information charging Zeid, appellant and a third person with blackmail of himself and Ralph Krivanek and conspiracy to commit an unlawful act, i.e., blackmail.

At the second meeting, by pre-arrangement with the police, Keyes and Krivanek passed to appellant $2,000 in marked bills which Krivanek had procured. Upon leaving the bar where the money was passed police apprehended appellant and Zeid. The $2,000 and a switchblade knife were found on appellant; a loaded revolver was found on Zeid. The arrests were made outside the bar. As appellant was standing there, Keyes rushed out of the bar and attempted to get at or attack Flex and had to be restrained by the police.

Blackmail is defined by Section 801 of The Penal Code of 1939, which states, in part: "Whoever by means of . . . oral communications, intimidates, or levies blackmail, or extorts money, property or other valuable thing from any person or by such means attempts to intimidate, annoy, or levy blackmail, or extort money, property or other valuable thing from any person, is guilty of a misdemeanor. . . ." Act of June 24, 1939, P. L. 872, §801, 18 P.S. §4801.

On the witness stand both Keyes and Krivanek denied that any threats were made to them by appellant. The only direct testimony in regard to threats was given by several police officers who were present when the arrests were made. They testified that at that time when Keyes was three or four feet away from Flex he accused appellant of threatening him and his wife and that appellant remained silent although no one prevented him from speaking. Appellant argues that this testimony was hearsay and inadmissible as proof of threats. We believe that this argument is well taken.

We do not agree with the Commonwealth that Keyes' remarks are admissible as part of the res gestae. This exception to the hearsay rule, based upon the rationale that a spontaneous declaration of a person who has recently suffered an overpowering emotional and shocking experience is likely to be truthful, permits evidence of utterances of thought created by, or emanating from, the litigated act if they are so near in time thereto as to exclude the possibility that they were the product of premeditation or design. *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A. 2d 291 (1966). In this case the threats or oral communications, which are essential elements in the crime of blackmail, must have taken place prior to October 18, 1964, the date of the criminal information. The fact that the second meeting was pre-arranged and was held several days after any threats had been made gave ample opportunity for reflection and robbed the remarks of the spontaneity essential to permit the testimony as a res gestae declaration or spontaneous utterance. In addition the staged occurrence, in which Krivanek's marked money, not Keyes', was handed over, can hardly be said to be unexpected and shocking to Keyes. See *Allen v. Mack*, 345 Pa. 407, 410, 28 A. 2d 783 (1942).

Nor were such remarks admissible under the tacit admission rule of evidence which is no longer available to the Commonwealth. *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 223 A. 2d 296 (1966) ; *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A. 2d 904 (1967). In the latter case it was specifically held that upon a direct appeal where such admissions have been used at trial the judgment of conviction must be set aside and a new trial granted.

The improperly admitted testimony was hearsay and highly prejudicial to the appellant. It pertained to an extremely important element of the crime of blackmail and of the crime of conspiracy which in this case was

based on an alleged agreement to commit blackmail. Its admission clearly warrants a new trial on the blackmail and conspiracy charges.

The third crime of which appellant was convicted was carrying a deadly concealed weapon at the time of his arrest, contrary to the provisions of Section 416 of The Penal Code of 1939, 18 P.S. §4416. The weapon in question was a switch-blade knife, the carrying of which was clearly prohibited by the statute. Appellant's contention is that the Commonwealth did not meet its burden of showing that the knife was carried "with the intent . . . to do injury to any other person" as required by the statute. However, the statute also provides that "The jury trying the case may infer such intent from the fact the defendant carried such weapon" and were it not for the admission of the testimony pertaining to threats we would let this conviction stand. Such testimony may have convinced the jury of the appellant's intent to use the knife unlawfully and overcome his explanation that he carried the knife only because he used it in his business. The interest of justice requires that a new trial be granted on this charge which was tried in conjunction with the blackmail and conspiracy charges.

Judgments of sentence reversed and new trials granted.