Commonwealth *v.* Collins, Appellant.

Argued January 9, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Louis Lipschitz,* with him *James J. Boyle,* for appellant.

*Michael M. Baylson,* Assistant District Attorney, with him *James T. Owens,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 9, 1970:

In 1966 Charles Collins was brought to trial for the murder of his wife, Violet. The jury found him guilty of murder in the first degree and the penalty was fixed at life imprisonment. This is a direct appeal from that judgment of sentence.

The evidence adduced at the trial indicated that on June 4, 1965, Collins and his family went on a shopping trip and came home late in the afternoon. While Collins' wife and children went down the street to visit a neighbor, Collins went inside his own house for a short time and then asked a neighbor to walk down the street and call his wife home. When Mrs. Collins arrived at the house Collins beat her to death with a hammer, an event witnessed by a young girl who lived nearby. Upon discovering that he had been observed, Collins enjoined the girl never to tell anyone what she had

seen and then left. As Collins drove away from his home two people heard him say "I just killed Violet." A short time later the Collins children discovered their mother's lifeless body.

Collins now argues that his conviction must be reversed for six reasons, none of which persuade us that he should prevail and which we will discuss severally.

Collins' first argument is that the trial court abused its discretion in permitting the Commonwealth to show the jury a colored slide depicting the decedent's head injuries, because the slide's evidentiary value was far outweighed by the potential prejudice to Collins. Although Collins has correctly set forth the applicable test, see *Commonwealth v. Robinson*, 433 Pa. 88, 249 A. 2d 536 (1969); *Commonwealth v. Wilson*, 431 Pa. 21, 244 A. 2d 734 (1968); *Commonwealth v. Powell*, 428 Pa. 275, 241 A. 2d 119 (1968), we cannot find that the trial court abused its discretion in permitting the slide to be shown. The slide was as noninflammatory as possible because all excess blood had been removed from the decedent's face before the photograph was taken, so this is not a case where some less inflammatory version of the slide could have been utilized. Cf. *Commonwealth v. Eckhart*, 430 Pa. 311, 242 A. 2d 271 (1968). Additionally, the trial court found as a fact that the slide was necessary to the jury's understanding of the medical examiner's testimony, a finding we cannot dispute. Hence we find that the slide was neither so inflammatory nor so unnecessary as to be inadmissible.

Collins' second contention is that the trial court erred both in permitting a police officer to testify that Collins fled when the officer attempted to arrest him and in charging the jury that evidence of flight might indicate consciousness of guilt. There was no error in either allowing the testimony or giving the charge. As

we said in *Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A. 2d 782, 789 (1964) : "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." (citations omitted). The police officer's testimony and the jury instructions on flight were within the boundaries of the law as stated in *Coyle,* and both were therefore proper. Collins' assertion that this rule of law is subject to the same constitutional infirmities as are tacit admissions, disapproved in *Commonwealth v. Dravecz,* 424 Pa. 582, 227 A. 2d 904 (1967), is erroneous. Tacit admissions were barred because they violated an accused's Fifth Amendment right to remain silent in the face of police interrogation, a problem which has no analogy to the situation presented here. Flight, unlike silence in the face of police questioning, cannot be taken as an assertion of a constitutional right.

Collins' third argument is that the trial court improperly instructed the assistant district attorney to coach a witness's answers to certain questions. The problem arose when the defense called as its first witness the detective who had been in charge of the investigation and attempted to establish that his investigation had been cursory, the inference being that a more careful examination would have disclosed the defendant's innocence. The Commonwealth objected to this line of questioning because it felt that the real reason for the shortness of the original investigation was that the day after the murder Collins had given the police a confession, which had been subsequently suppressed. At a side bar conference the assistant district attorney expressed his intention to bring out on cross-examination the fact that the detective had cut short his investi-

gation for this reason. The trial judge told the assistant district attorney that any mention of a confession would cause a mistrial and instructed him to tell the detective not to mention the confession. We specifically approve of the trial court's handling of this problem; it was hardly inappropriate for the trial judge to avoid the delay and expense of a mistrial in this fashion.

Collins' fourth assertion is that the trial court erred in refusing to allow defense counsel access to a "memorandum" made when an assistant district attorney, not the same assistant who was trying the case, interviewed one of the witnesses. Defense counsel did not ask to see the "memorandum" until the last day of the trial, twenty-four hours after the witness whose interview was the subject of the "memorandum" testified and even though defense counsel knew that some notes had been taken at the interview before the trial even began. In addition to the tardiness of defense counsel's request, there is a serious problem with respect to the nature of this "memorandum." The assistant district attorney who tried the case told the trial court that the only "memorandum" in the file which concerned the interview was a collection of three or four sheets of yellow paper with scribbled notes presumably made by the assistant district attorney who interviewed the witness. We doubt that such notes constitute a discoverable statement, *Campbell v. United States*, 365 U.S. 85, 81 S. Ct. 421 (1961), and we do not find that the trial court erred in refusing to order the Commonwealth to produce the notes for defense counsel's inspection.

Collins' fifth complaint is that the trial court erred in refusing to declare a mistrial when the assistant district attorney asked Collins on cross-examination if it were not true that a girl named Barbara Jean Moore had seen him strike his wife with the hammer that ap-

parently caused her death, and then produced Miss Moore, who did so testify, for the first time as a rebuttal witness. Up to that point in the trial there had been no suggestion that such an eyewitness existed.

The reason for Miss Moore's late appearance in the trial was that she had not come forward with her story until Monday, November 6, 1966, the sixth day of the trial, after the Commonwealth had finished presenting its case-in-chief. We do agree with Collins that the manner of introducing Miss Moore's testimony into the case left much to be desired. The Commonwealth should have requested permission to reopen its case and introduced her testimony in that fashion, rather than alluding to her existence for the first time in a surprise question on cross-examination. Improper though the Commonwealth's procedure may have been, we do not believe that a reversal is required in this case. The evidence against Collins was truly impressive, and we cannot believe that the method of introducing Miss Moore's testimony affected the outcome of the trial. Thus we believe that the error was harmless, and consequently does not require a reversal of this conviction. *Commonwealth v. Padgett*, 428 Pa. 229, 237 A. 2d 209 (1968); cf. *Rosenberg v. United States*, 360 U.S. 367, 79 S. Ct. 1231 (1959).

Collins' sixth and final assignment of error is that the trial court erred in refusing to charge the jury on voluntary manslaughter. In support of this assertion he argues that he was mad at his wife, suspecting that she had been seeing another man when he was previously incarcerated on a drunk driving charge, and that this was sufficient evidence of provocation to raise the issue of voluntary manslaughter. Unfortunately, this evidence, even if true, does not come close to establishing the prerequisites of voluntary manslaughter as set forth in *Commonwealth v. Barnosky*, 436 Pa. 59, 64,

258 A. 2d 512, 515: " 'To reduce an intentional blow, stroke, or wounding resulting in death to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder. Commonwealth v. Drum, 58 Pa. 9 (17).' Commonwealth v. Paese, 220 Pa. 371, 373, 69 Atl. 891, 892 (1908), cited in Commonwealth v. Walters, 431 Pa. 74, 82, 244 A. 2d 757, 762 (1968). See Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540 (1951) ; Commonwealth v. Cargill, 357 Pa. 510, 55 A. 2d 373 (1947)."

Judgment of sentence affirmed.