Commonwealth *v.* Schmidt, Appellant.

186

Submitted September 27, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Richard C. Montgomery, Michael C. McLean, Allan McClain,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellant.

*Carol Mary Los* and *Robert L. Campbell,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, January 19, 1973:

At the conclusion of a jury trial on February 13, 1965, appellant, who had been represented by two court-appointed counsel, was found guilty of murder in the first degree and was sentenced to life imprisonment. Post-trial motions were denied by the lower court *en banc* and a direct appeal to this Court, filed on April 29, 1966, resulted in affirmance of the judgment of sentence. *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966).[1]

Subsequently, appellant filed a petition under the Post Conviction Hearing Act (PCHA),[2] alleging five separate errors, none of which had been previously presented on the earlier direct appeal.[3] At a hearing on

---

[1] Mr. Justice ROBERTS filed a dissenting opinion, 423 Pa. at 442.

[2] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 et seq.

[3] The petition was first filed on October 17, 1968; it was dismissed by the lower court without appointment of counsel and without holding a hearing. An appeal to this Court resulted in a remand for the appointment of counsel because "[s]ummary disposition of a petition, without appointing counsel, is permitted only when a previous petition involving the same issue or issues has been finally determined adversely to the petitioner and he . . . was represented by counsel in proceedings thereon." *Commonwealth v.*

this petition, appellant himself testified to the effect that his failure to raise any of the newly presented issues on his earlier direct appeal should not operate as a "waiver" of his right to do so now in view of his age at the time of trial and his lack of knowledge of the law.[4] The Commonwealth called as a witness one of appellant's two trial counsel and sought to elicit from him the reasons he might have had for not raising the issues now presented. On the basis of the testimony at this hearing and on the record made at trial, the hearing judge concluded that the errors alleged in the petition were without merit, were "waived" under section 4 of the PCHA, or both, and hence dismissed the petition. We are here presented with an appeal from that order of dismissal.

To facilitate understanding of the discussion to follow, it will be necessary to set forth a brief account of the crime, the events leading to trial, and the testimony at trial.[5] On June 10, 1964, in the early morning hours of darkness, the Caecilia Mannerchor Club on the North Side of Pittsburgh was burglarized. A Joseph Meier, resident of the Club's second floor, surprised the felons and was struck a fatal blow. The crime was similar in nature to three other burglaries which had been perpetrated within a ten day period immediately preceding June 10 and which occurred within a narrow geographical area of the North Side; in all four, entry was accomplished through a broken

_Schmidt_, 436 Pa. 139, 140, 259 A. 2d 460 (1969). Upon remand counsel was appointed and amendments to the petition were filed. A hearing on this amended petition was held on September 15, 1970.

[4] Appellant Schmidt was seventeen years of age both at the time of commission of the crime charged and at the time of trial.

[5] For a more detailed recitation of the factual and procedural background of the case, see the opinion of Mr. Justice EAGEN, speaking for the Court on appellant's direct appeal from his judgment of sentence, _Commonwealth v. Schmidt_, 423 Pa. 432, 224 A. 2d 625 (1966).

window and in all four the object was to remove the coin boxes of automatic vending machines. On June 12, 1964, police arrested the appellant George Schmidt and two of his friends, Kenneth Baurle and William Thorton. Although appellant for several days denied any connection with the Caecilia Mannerchor Club burglary and murder, he did admit that the three earlier crimes were of his doing. His friends, however, admitted participation in all four, and placed the Meier murder weapon in Schmidt's hands. When faced with the willingness of Baurle and Thorton to detail the events of June 10, Schmidt in turn confessed that he had in fact so acted, and joined in a tape-recorded session in which all three admitted burglarizing the Mannerchor Club. Schmidt's statement was then reduced to writing and signed. The appellant and Kenneth Baurle were indicted for murder, and Thorton was indicted on the charge of accessory before and after the fact of murder.

Prior to trial, appellant's court-appointed counsel moved to suppress the confession given by Schmidt on the ground that it was involuntary in the light of the circumstances under which it was obtained and on the ground that it was obtained in violation of the decision of the United States Supreme Court in *Escobedo v. Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977 (1964). That motion was denied after a lengthy hearing to be discussed later in this opinion. Schmidt then pleaded not guilty and was tried by a jury.

At trial the Commonwealth introduced evidence to establish the occurrence of the murder, introduced evidence to prove the three burglaries which occurred in the ten-day period prior to June 10, 1964, and then linked Schmidt to all four crimes by use of his tape-recorded confession and by use of physical evidence seized from his room and shown to be fruits of the ear-

lier, non-fatal crimes. Appellant testified on his own behalf and attempted to repudiate his confession only to the extent that it related to the Mannerchor Club burglary. He affirmed his participation in the earlier crimes, but asserted that his confession with regard to the fatal burglary was involuntarily extracted by police threats to prosecute his mother, by physical abuse administered by interrogating officers, by relentless questioning and by misrepresentation of the law. As its verdict shows, the jury did not accept this account of coercion. By our earlier decision we affirmed the lower court's finding that the confession was not involuntary.

In the PCHA petition, Schmidt alleged that the following errors were committed before or at trial and require that his conviction be reversed:

(1) That his confession was a "fruit" of an illegal arrest.

(2) That evidence of "unrelated" crimes had been introduced at trial.

(3) That the physical evidence which linked Schmidt to the three earlier burglaries was seized in violation of his Fourth Amendment rights.

(4) That there was no certification hearing in Juvenile Court prior to Schmidt's being bound over for trial in a court of general criminal jurisdiction.

(5) That a "tacit admission" was introduced at trial in violation of Schmidt's Fifth Amendment rights.

We will discuss these allegations in the above order.

## I. The Illegal Arrest

Schmidt, Baurle and Thorton were arrested on a warrant issued by a Pittsburgh police magistrate. The warrant recited that appellant was wanted on a charge of "suspicion of Felony, Murder and Burglary"; it contained no information whereby the issuing magistrate

might have concluded that probable cause existed. Seizing upon the inadequacies of this document, appellant urges that his arrest was illegal and that the confession which followed the arrest was within the scope of the "taint", *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441 (1963) ; *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661 (1967). It follows, appellant argues, that the confession must be suppressed, notwithstanding that its voluntariness has already been established by litigation in this Court.[6]

As the Commonwealth points out, this argument was available to appellant prior to trial, was not raised in a pretrial motion as required by the applicable Pennsylvania Rule of Criminal Procedure,[7] and was not raised on direct appeal. It therefore concludes that the argument is "waived" within the meaning of section 4 of the PCHA. Appellant does not contest the premises of the Commonwealth's argument, but disputes the conclusion that the alleged error was "waived".

(a)  *Applicability of the PCHA to this Question*

There is at the outset a question of whether section 4(b) of the Post Conviction Hearing Act, 19 P.S. §1180-4(b), wherein is found the waiver concept which the Commonwealth here advances, applies to Schmidt's fail-

---

[6] Appellant's argument appears to be that if the arrest warrant is defective, the arrest itself is unlawful. While that proposition might be true were this a search warrant, *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637 (1969), it is not true with respect to arrest warrants. To be lawful an arrest need be supported by probable cause; there is no overriding warrant requirement. *McCray v. Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62 (1967) ; *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726 (1963) ; *Commonwealth v. Carter,* 444 Pa. 405, 282 A. 2d 375 (1971) ; *Commonwealth v. Murray,* 437 Pa. 326, 263 A. 2d 886 (1970).

[7] At the time of Schmidt's trial, Pennsylvania Rule of Criminal Procedure 2001, adopted by this Court and effective October 1, 1963, required the issue of illegal arrest to be raised by pretrial motion.

ure to raise by pretrial motion in 1965 the question of the legality of his arrest.

By its own terms, the Post Conviction Hearing Act "establishes a post-conviction *procedure* for providing relief from convictions obtained and sentences imposed without due process of law." It "encompass[es] all common law and statutory *procedures* for the same purpose that exist when this statute takes effect, including habeas corpus and coram nobis." 19 P.S. §1180-2 (Supp. 1972-73) (emphasis added). To be eligible for post-conviction relief, a person who, like Schmidt, is "incarcerated in the Commonwealth of Pennsylvania under a sentence of . . . imprisonment . . . .", 19 P.S. §1180-3(b) (Supp. 1972-73), "must" initiate a proceeding under the Act and follow the procedure therein set forth. There is no other channel by which to attack a conviction collaterally in the courts of this Commonwealth.

The Act states in section 4 that "an issue is waived [and hence no relief can be obtained] if: (1) The petitioner knowingly and understandingly failed to raise it and it could have been raised *before the trial*, at the trial, on appeal, *in a habeas corpus proceeding* or any other proceeding actually conducted or in a prior proceeding actually initiated under this act. . . ." 19 P.S. §1180-4(b) (Supp. 1972-73) (emphasis added). Section 4 then creates a rebuttable presumption that a failure to raise an issue was knowing and understanding, 19 P.S. §1180-4(c) (Supp. 1972-73); the burden of rebutting the presumption is upon the PCHA petitioner. 19 P.S. §1180-4(b)(2) (Supp. 1972-73).

In *Commonwealth v. Cannon,* 442 Pa. 339, 275 A. 2d 293 (1971), we held that section 4 waiver provisions did not apply to the failure to raise issues in a pre-PCHA habeas corpus petition. Noting that under prior habeas corpus law there was no corresponding concept of "waiver", we found it impossible to "conclude that

appellant knowingly and understandingly waived his present claims by virtue of his failure to raise them in a pre-PCHA 1965 habeas corpus petition." 442 Pa. at 342. We followed that decision in *Commonwealth v. Butler*, 442 Pa. 476, 276 A. 2d 536 (1971), and recognized in *Commonwealth v. Melton*, 449 Pa. 223, 296 A. 2d 727 (1972), that the same reasoning applied to a failure to raise issues in a direct appeal taken pre-PCHA. The question necessarily before us today, then, is whether these three cases require us similarly to view a failure, prior to the effective date of the PCHA, to raise an issue by pretrial motion.

Our pre-*Cannon* interpretations of section 4 of the Act recognized that the Act does refer ("in a habeas corpus proceeding") to events occurring prior to the effective date of the Act. See, e.g., *Commonwealth v. Johnson*, 433 Pa. 582, 252 A. 2d 641 (1969) ; *Commonwealth v. Henderson*, 433 Pa. 585, 253 A. 2d 109 (1969). The error in those cases, an error corrected in *Cannon*, supra, was in not recognizing that section 4's rebuttable presumption that failure to raise an issue in a pre-PCHA habeas corpus proceeding was "knowing and understanding" was always in fact effectively rebutted by the absence of any corresponding waiver doctrine in prior existing habeas corpus law. Because no adverse consequence attached to the failure to raise an issue in a pre-PCHA habeas corpus petition, we found it impossible to believe, notwithstanding the rebuttable presumption to the contrary, that such failure was knowing and understanding of anything.

In the case at bar, however, the rationale of *Cannon, Butler* and *Melton* has no application. At the time of his trial in 1965, a Pennsylvania Rule of Criminal Procedure (see note 7, supra) required Schmidt to raise the issue of legality of his arrest prior to trial, and his failure to do so, under pre-PCHA habeas cor-

pus law, would have effectively precluded his seeking collateral relief on that ground after conviction. *Commonwealth ex rel. Cully v. Myers*, 422 Pa. 561, 222 A. 2d 910 (1966) ; *Commonwealth ex rel. Souder v. Myers*, 421 Pa. 371, 219 A. 2d 696 (1966) ; *Commonwealth ex rel. Cuevas v. Rundle*, 418 Pa. 373, 211 A. 2d 485 (1965) ; *Commonwealth ex rel. Pomales v. Myers*, 418 Pa. 369, 211 A. 2d 483 (1965) ; *Commonwealth ex rel. Adderley v. Myers*, 418 Pa. 366, 211 A. 2d 481 (1965) ; *Commonwealth ex rel. Fox v. Maroney*, 417 Pa. 308, 207 A. 2d 810 (1965). That is to say, there was operative in this case, unlike the situation in *Cannon*, a doctrine of waiver as to issues required to be raised by pretrial motion, which prevented such issues to be raised after trial by habeas corpus. Indeed, as the cases cited above indicate, the doctrine was one of unvarying and untempered conclusiveness. Because this doctrine existed, there is here no obstacle to following the legislative mandate of section 4(c) of the PCHA. It follows that the failure to raise this issue "before the trial" will be regarded as "knowing and understanding" until the petitioner-appellant demonstrates to the contrary. This he is required to do if he is to prevail under the Act, but would not have had the opportunity to do under prior law.

We turn then to a consideration of whether or not the failure to raise the illegal arrest issue pretrial in 1965 was or was not a knowing and understanding decision; if it was not, the petitioner would be entitled, under the PCHA, to a consideration on the merits.

(b)  *Waiver under the PCHA*

In *Commonwealth v. Snyder*, 427 Pa. 83, 89 n.4, 233 A. 2d 530 (1967), we defined the concept of "waiver" as embodied in section 4 of the PCHA in the same man-

ner as the term had been applied by the Supreme Court of the United States in *Fay v. Noia,* 372 U.S. 391, 9 L. Ed. 2d 837 (1963), but at the same time we recognize that "[t]he federal standard . . . applicable to federal habeas corpus petitions by state prisoners is not a constitutional requirement for the states . . . ." See also *Commonwealth v. Satchell,* 430 Pa. 443, 446, 243 A. 2d 381 (1968). In *Noia* the Supreme Court held that when adjudicating petitions for writs of habeas corpus filed by state prisoners, the federal judiciary has power to reach all questions alleging deprivation of federally guaranteed rights. It went on to say that the lower courts should, in their discretion, refuse to exercise that power when it appears that the state petitioner has "deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Noia,* supra, 372 U.S. at 438. By aligning our State's concept of section 4 "waiver" under the PCHA with that used in the federal courts, this Court sought to insure that the occasions would be few when the federal courts, in considering petitions for habeas corpus filed by prisoners incarcerated by this Commonwealth, would find it necessary to reach and decide issues which our State courts had refused to decide on the merits.[8]

Thus, when reaching a decision whether appellant has waived his procedural right to raise in this PCHA proceeding the issue of the legality of his arrest, we are guided not only by our own precedents interpreting the language of the PCHA, but also by the federal

---

[8] Cf. Note, State Criminal Procedure and Federal Habeas Corpus, 80 Harv. L. Rev. 422, 434 (1966) : "The adoption by the states of a similarly liberal standard [to that of *Fay v. Noia*] would make a state post-conviction remedy a meaningful alternative to full-scale federal review."

precedents interpreting the "deliberate by-pass" language of *Fay v. Noia.*[9]

(c) *Whether Failure to Raise the Issue Pretrial was Knowing and Intelligent.*

Were the only question here whether Schmidt himself "deliberately by-passed" the opportunity to challenge his arrest by pretrial motion, we would have little difficulty in saying that he did not. At the PCHA hearing he testified that he knew nothing of such a legal argument or of the procedures available for making it, and, in view of his age at the time of his arrest and trial and his obvious lack of schooling in the law, doubtless he did not knowingly and intelligently fail to raise the issue. We must, however, proceed further and determine whether appellant's trial counsel knowingly and intelligently failed to raise the issue and, if so, whether that decision is binding upon appellant. Why this is so merits some exposition and brings us to the role of counsel in the failure to raise before trial the question of the legality of Schmidt's arrest.

Although language in *Fay v. Noia* was at one time thought to indicate that federal courts could never find a deliberate by-pass of state procedures unless the defendant himself participated in the decision, the United States Supreme Court in *Henry v. Mississippi,* 379 U.S. 433, 13 L. Ed. 2d 408 (1965), recognized that some decisions in criminal proceedings must be made by counsel alone, and that the criminal defendant must be considered bound by such a choice. While the issue in *Henry* involved a determination at trial not to object to the introduction of certain evidence, subsequent fed-

---

[9] We pay special attention to those decisions of the United States Court of Appeals for the Third Circuit which bear on the question, for it is in the federal district courts of that Circuit that a prisoner such as Schmidt must petition for the federal writ.

eral cases have broadened the range of decisions by which the attorney can bind his client so as to include the choice of whether or not to raise by pretrial motion the question of unconstitutionally obtained evidence. *United States ex rel. Green v. Rundle*, 452 F. 2d 232 (3d Cir. 1971) ; *United States ex rel. Cruz v. LaVallee*, 448 F. 2d 671 (2d Cir. 1971) ; *United States ex rel. Schaedel v. Follette*, 447 F. 2d 1297 (2d Cir. 1971). We have ourselves held that counsel's deliberate choice not to raise such an issue by pretrial motion is binding on his client. *Commonwealth v. Snyder*, supra, 427 Pa. at 93. It follows, therefore, that notwithstanding appellant's own lack of knowledge of the issue of the legality of his arrest and his lack of participation in the determination not to raise the issue by pretrial motion, if his counsel was aware of the possibility of raising the question and deliberately chose not to do so, Schmidt will be bound by that decision and the issue will be "waived" within the meaning of section 4 of the PCHA.

An examination of the record, including both that of the PCHA hearing and that of the suppression hearing, satisfies us that in fact Schmidt's counsel made such a deliberate choice. At the former, when examined by the Commonwealth with regard to the question of probable cause to arrest, the trial counsel testified as follows: "Q. Did you at that time [prior to trial] feel there was a probable cause lacking for the arrest? A. No. My recollection is that we felt that a murder had been committed, and the police were 'hot' on it and they had rounded up a couple of these boys, and as I recall, we can't say that I felt there was a probable cause for it, but let me put it this way, that I can't say that we felt there was a lack of probable cause at the time." It is apparent from the record of the suppression hearing that appellant's counsel not only did not

198

feel that there was a lack of probable cause to support the arrest, but that the reasons motivating that arrest might be turned to good advantage. The motion to suppress was a two-pronged attack on the confession obtained by the police from Schmidt: It asserted (1) that *Escobedo v. Illinois,* supra, had been violated, and (2) that under all the circumstances, the confession was not voluntary. During the hearing on that motion, appellant's counsel attempted to elicit from police officers the information that had led them to arrest Schmidt. The Commonwealth objected on grounds of relevancy, arguing that the question went beyond the scope of the issues raised in the motion. In reply, appellant's attorney stated that he thought it important to develop that at the moment Schmidt was arrested, the police had already accumulated information which led them to believe that appellant was involved in the murder, and that therefore, under *Escobedo,* the investigation had become accusatory and had focused on Schmidt.[10] Thus, not only did appellant's counsel be-

---

[10] During the hearing of the motion to suppress Schmidt's confession, defense counsel attempted to cross-examine the detective who arrested Schmidt as follows (emphasis added): "Q. You say you began to investigate this case on the 11th of June? A. I believe so, yes. Q. What evidence pointed to the defendant George Schmidt had you accumulated at the time you made this arrest? Assistant District Attorney: Objected to, Your Honor. The Court: I don't understand what you are trying to do here. Are you attacking the validity of the taking of these young men into custody? For the purpose of this case I don't see how it makes any particular difference, does it? Defense Counsel: *If the Court please, under the cases it is material to determine when this investigation changed from the investigation to the accusatory stage.* Asst. D. A.: The search warrants and arrest warrants indicate they were being arrested for murder. The Court: Let's go ahead. I thought you were trying to attack the validity of the information of warrants issued. That was my thought here. Defense Counsel: That is not what we have in mind right now, Your Honor. We are concerned about the validity of these statements."

lieve that it was not worthwhile to argue that probable cause did not exist for the arrest, but further believed and attempted to show that the police possessed information prior to arrest to support the conclusion that Schmidt was implicated in the murder of Joseph Meier. In this failure to question the legality of the arrest, we find not only a knowing and intelligent decision by counsel, but further a decision made as a matter of strategy hopefully of benefit to appellant. We conclude, therefore, that the legality of the arrest cannot now be questioned in this PCHA proceeding, because it must be considered waived within the meaning of section 4 of the PCHA.[11]

## II. Evidence of "Unrelated" Crimes

Appellant next argues that the introduction at trial of evidence proving the commission of other crimes by Schmidt deprived him of due process of law. We find it unnecessary to decide whether such evidence was, in fact, admissible, because we conclude that in either event, no error is alleged which rises to constitutional dimensions.

As a general rule, of course, evidence of the commission of crimes unrelated in time and space to the

---

[11] A study of decisions of the United States Court of Appeals for the Third Circuit indicates that that court would agree with us in finding that Schmidt's counsel deliberately by-passed the opportunity to raise this issue. *United States ex rel. Green v. Rundle,* 452 F. 2d 232 (3d Cir. 1971) ; *United States ex rel. Broaddus v. Rundle,* 429 F. 2d 791 (3d Cir. 1970) ; *United States ex rel. Saunders v. Ziegler,* 319 F. Supp. 492 (E.D. Pa. 1970).

Other federal circuits would agree as well. See, e.g., *Bowman v. Wainwright,* 460 F. 2d 1298 (5th Cir. 1972) ; *Fields v. Swenson,* 459 F. 2d 1064 (8th Cir. 1972) ; *United States ex rel. Schaedel v. Follette,* 447 F. 2d 1297 (2d Cir. 1971) ; *Mathis v. Colorado,* 425 F. 2d 1165 (10th Cir. 1970) ; *Delaney v. Gladden,* 397 F. 2d 17 (9th Cir. 1968).

crime charged in the indictment is not relevant, and hence is inadmissible. *Commonwealth v. Peterman,* 430 Pa. 627, 244 A. 2d 723 (1968); *Commonwealth v. Williams,* 307 Pa. 134 (1932). Where, however, such evidence would prove a common scheme, plan or design, proof that the defendant committed one such crime within the scheme or plan is relevant to establish that the defendant committed the crime charged where that crime is also part of the design. *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955). See also *Commonwealth v. Smith,* 443 Pa. 151, 277 A. 2d 807 (1971); *Commonwealth v. Coyle,* 415 Pa. 379, 203 A. 2d 782 (1964). The principle, however, is one of state evidentiary law, and none of the cases above cited establish constitutional propositions.

While it may be possible to imagine situations in which the prosecution's introduction of evidence of unrelated crimes is so flagrant and prejudicial as to constitute error of constitutional dimension, we see in the issue as presented in this case only a close question of evidentiary law. The relationship in time and place between the Mannerchor burglary and the three burglaries immediately preceding it arguably places the Commonwealth's evidence within the principle of *Commonwealth v. Wable,* supra. We have consistently refused to entertain allegations of error that do not arise to constitutional dimension on PCHA petitions. *Commonwealth v. Smulek,* 446 Pa. 277, 284 A. 2d 763 (1971); *Commonwealth v. Lowery,* 438 Pa. 89, 263 A. 2d 332 (1970); *Commonwealth v. Musser,* 437 Pa. 131, 262 A. 2d 678 (1970). Appellant, therefore, can claim no relief on this argument.

### III. Illegal Search

The police officers who arrested Schmidt and his two companions on the strength of an arrest warrant

earlier discussed also had obtained a search warrant. That document, like the arrest warrant, recites that it was issued on "suspicion" and contains no information from which the magistrate could conclude that probable cause existed. Schmidt argues, therefore, that the items of physical evidence linking him to the three burglaries committed before June 10, 1964 (the date of the Mannerchor Club burglary) were seized in violation of his Fourth Amendment rights, and that he is therefore entitled to a new trial. We disagree and hold that conceding the illegality of the evidence, its introduction was harmless beyond a reasonable doubt.

It will be recalled that appellant Schmidt confessed his participation in these three earlier crimes as well as to his involvement in the Mannerchor Club crime. At trial that confession was placed in evidence by the Commonwealth. Schmidt took the stand in his own behalf and attempted to repudiate only that part of the confession that related to the Mannerchor Club incident. He affirmed *on the stand* his earlier admission to having perpetrated the three prior burglaries. This perpetration was the fact which the Commonwealth's evidence, seized under the allegedly defective search warrant, had been introduced to prove. The error, if error there was, is harmless within the standards of *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 706 (1967). See also *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284 (1969); *Commonwealth v. Padgett,* 428 Pa. 229, 237 A. 2d 209 (1968).

### IV.   Juvenile Certification[12]

At the time of the commission of the Meier murder, appellant was 17 years of age. He argues that he was

---

[12] This issue, like the "unrelated crimes" issue, could be disposed of by observing that the allegation of deprivation of a ju-

not certified by the Juvenile Court to the Court of Oyer and Terminer as required by law, and points to the Juvenile Court Law of Allegheny County, Act of June 3, 1933, P. L. 1449, art. II, §202, as amended, 11 P.S. §269-202(f) : "The court [Juvenile Court] hereby created shall have jurisdiction—(f) To inquire, under oath or affirmation, of all crimes, misdemeanors and offenses whatsoever against the laws of this Commonwealth, which shall be triable in the county, wherein the person charged is a child under eighteen years of age." The Commonwealth in answer cites §413 of the same statute, as amended, 11 P.S. §269-413 : "If, during the pendency of a criminal charge, other than murder, against any person in the court of quarter sessions or oyer and terminer, it shall be ascertained that the person charged with the offense was under the age of sixteen years at the time the alleged offense was committed, it shall be the duty of such court to transfer such case immediately, together with all the papers, documents and testimony connected therewith, to the juvenile court. If such child is sixteen years of age or over and less than eighteen years of age, such court may, at its discretion, transfer such cases to the juvenile court in the same manner." Because the trial court was aware of Schmidt's age, the Commonwealth argues, and because it chose not to transfer Schmidt to the Juvenile Court, the court was exercising a power given it by the legislature.

---

venile certification hearing does not set forth an error of constitutional magnitude. We are unaware of any authority, and appellant cites us to none, which holds that a juvenile charged with murder has a constitutional right to a preliminary hearing before a juvenile court and before no other kind of magistrate or court.

Neither party, however, has urged that point upon us, and, as the question as presented is purely legal and does not require the development of facts not available in the record, we proceed to determine the question on the merits.

We have held in construing the general Juvenile Court Law, Act of June 2, 1933, P. L. 1433, as amended, 11 P.S. §243-268, that the juvenile court judge's sole responsibility in a case involving murder is to determine if the Commonwealth has made out a prima facie case in the juvenile court proceedings.[13] If so, then he *must* hold the juvenile for further proceedings in the criminal courts. *Gaskins Case*, 430 Pa. 298, 244 A. 2d 662 (1968); *Commonwealth v. McIntyre*, 435 Pa. 96, 254 A. 2d 639 (1969); *Commonwealth v. James*, 440 Pa. 205, 269 A. 2d 898 (1970). The juvenile court judge in cases of felonious homicide, in other words, does not possess the discretion whereby he "may" certify a case for prosecution in normal criminal channels if "in his opinion, the interests of the State require a prosecution of such case on an indictment." Juvenile Court Law of Allegheny County, §416, 11 P.S. §269-416. His function is thus that of a magistrate holding a preliminary hearing in a murder case charging a non-juvenile, with the exception that should the Commonwealth not establish a prima facie case, the confidentiality of the juvenile court certification proceeding will protect the interests of the child.

Schmidt was not brought before the Juvenile Court at any stage of this proceeding, but was bound over to the grand jury by a coroner's inquest at which he was represented by his court-appointed attorneys and at which the Commonwealth established a prima facie case to the satisfaction of the six coroner's jurors. The coroner thus properly performed the committing function, and we fail to see that Schmidt's interests were in

---

[13] The general Juvenile Court Law, Act of June 2, 1933, P. L. 1433 and the Juvenile Court Law of Allegheny County, Act of June 3, 1933, P. L. 1449, art. II, do not differ materially in the certification procedures relevant to the above discussion.

any way prejudiced by the procedure actually followed.[14]

## V. The Tacit Admission

At trial the Commonwealth introduced the testimony of two witnesses who stated that, shortly after the Caecilia Mannerchor Club burglary, they were riding in an automobile with appellant and Baurle. Both witnesses testified that they heard Baurle say something to the effect that "he was going to burn his fingerprints off" because "they were all over the club", and both testified in answer to a question by the District Attorney that appellant made no reply to these comments. Defense counsel made timely objection to this testimony, although not on the precise ground now urged by appellant. It is clear that the evidence was offered as a "tacit admission" of Schmidt, and was thought by the Commonwealth to be admissible under *Commonwealth v. Vallone*, 347 Pa. 419, 32 A. 2d 889 (1943) and the long line of decisions upon which that case in turn relied.

The doctrine of *Vallone* and its predecessors ran afoul of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), where the Supreme Court of the United States set forth certain prophylactic rules applicable to "custodial" interrogations. In a footnote to that decision, the Supreme Court said the following: "In accord without decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege *when he is under police custodial interrogation*. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privi-

---

[14] Cf. *Commonwealth v. Sullivan*, 446 Pa. 419, 429, 286 A. 2d 898 (1971); *Commonwealth v. Guy*, 41 Pa. D. & C. 2d 151, 155 (Alleg. Cty. 1966).

lege in the face of accusation." *Miranda*, supra, 384 U.S. at 468 n.37 (emphasis added). Responding to this pronouncement in *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 223 A. 2d 296 (1966), we held inadmissible Shadd's silence in the face of an accusation by a co-felon during a police interrogation. We denied retroactive application to the new rule, citing and discussing *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882 (1966). In *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A. 2d 904 (1967), we again condemned the practice of police officials' confronting a person in a custodial setting, reading a statement by another person implicating the interrogee in a crime, and then attempting to capitalize on the latter's failure to deny the accusation. Again we refused to give this principle retroactive application, holding that it "need only be applied to those cases wherein the judgment was not finalized as of the date Miranda was announced." *Dravecz*, supra, 424 Pa. at 595 (concurring opinion of Mr. Justice EAGEN in which a majority of the Court joined). Since Schmidt's direct appeal from his conviction of murder was pending in this Court at the time that *Miranda* was announced, this allegation of error was available to him on his PCHA petition. *Commonwealth v. Stevens*, 429 Pa. 593, 240 A. 2d 536 (1968).

Turning to the merits of this claim, the threshold question is whether the events narrated above do in fact constitute a "tacit admission" as proscribed by *Shadd* and *Dravecz*, supra. We think not. The statement attributed to Baurle referred only to *his own* fingerprints, not Schmidt's. The statement accused Schmidt of nothing; he was not the subject of the remark, and thus there was no reason for him to make any response. The evidence, therefore, lacked probative value in establishing the defendant Schmidt's participation in the

Mannerchor Club crimes, and the trial court erred in overruling defense counsel's objection. Schmidt, however, can claim no relief from that error unless admission of Baurle's statement is a mistake of constitutional dimension rather than one of state evidentiary law.

We note that the "tacit admission" complained of here differs in a crucial respect from those which we have heretofore found to be interdicted in *Miranda*: in Schmidt's case the alleged admission arose out of a conversation between individuals riding in a private automobile in the absence of any police authority whatever. In all our prior decisions the condemned admissions by silence arose in a custodial setting in the *presence* of police officers.[15]

Only recently in *Commonwealth v. Collins*, 440 Pa. 368, 269 A. 2d 882 (1970), we reiterated the view that *Miranda* impinges on the "tacit admission" rule only where the refusal to speak occurs during police interrogation. In that case the defendant argued that permitting the jury to draw an inference of guilt from the fact of flight violated his constitutional rights under *Miranda*. We there said: "Tacit admissions were barred because they violated an accused's Fifth Amendment right to remain silent *in the face of police inter-*

---

[15] See *Commonwealth v. Dennis*, 444 Pa. 328, 282 A. 2d 371 (1971); *Commonwealth v. Collins*, 440 Pa. 368, 269 A. 2d 882 (1970); *Commonwealth v. Little*, 432 Pa. 256, 248 A. 2d 32 (1968); *Commonwealth v. Stevens*, supra; *Commonwealth ex rel. Berkery v. Myers*, 429 Pa. 378, 239 A. 2d 805 (1968); *Commonwealth v. Jefferson*, 430 Pa. 532, 243 A. 2d 412 (1968); *Commonwealth ex rel. Staino v. Cavell*, 425 Pa. 365, 228 A. 2d 647 (1967); *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A. 2d 904 (1967); *Commonwealth ex rel. Smith v. Rundle*, 423 Pa. 93, 223 A. 2d 88 (1966); *Commonwealth ex rel. Shadd v. Myers*, supra.

To the same effect are the following Superior Court decisions: *Commonwealth v. Wetzel*, 214 Pa. Superior Ct. 536, 257 A. 2d 310 (1969); *Commonwealth v. Flew*, 209 Pa. Superior Ct. 482, 229 A. 2d 485 (1967).

*rogation,* a problem which has no analogy to the situation presented here. Flight, unlike silence in the face of *police questioning,* cannot be taken as an assertion of a constitutional right." *Collins,* supra, 440 Pa. at 372 (emphasis added). We therefore hold that Schmidt's claim of error in this respect, if indeed an admission by silence was involved, does not assert deprivation of a constitutional right. For reasons discussed earlier, it is not cognizable in a PCHA proceeding. *Commonwealth v. Smulek,* 446 Pa. 277, 284 A. 2d 763 (1971).

Finally, in light of the overwhelming evidence of guilt contained in appellant's explicit confession, the Baurle statement was inconsequential. Thus, even were we to find constitutional error in the admission of the testimony complained of, it would be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 706 (1967).

Having reviewed the appellant's claims of error and having found the appellant not entitled to relief, we affirm the order of the lower court.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

———

OPINION BY MR. JUSTICE ROBERTS:

Although I agree that the order of the hearing court should be affirmed, I disagree with the assertion contained in the other opinion (expressing the views of only two members of the Court) regarding the applicability of Section 4 of the Post Conviction Hearing Act.[1] [PCHA]. In my view, there are two alternative grounds for properly disposing of appellant's illegal arrest claim. First, it has long been the rule in this Com-

———

[1] Act of January 25, 1966, P. L. (1965) 1580, §§1 et seq., 19 P.S. §§1180-1 et seq. (Supp. 1972).

monwealth that failure to make a timely objection to the introduction of evidence precludes a litigant from challenging that evidence in a collateral proceeding. *Commonwealth ex rel. Fox v. Maroney,* 417 Pa. 308, 207 A. 2d 810 (1965). Here, appellant failed to challenge the legality of his arrest in his pretrial motion, at trial, or on direct appeal, *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966), and, thus is precluded from asserting that claim in this collateral proceeding.[2] In *Commonwealth ex rel. Fox v. Maroney,* supra at 313, 207 A. 2d at 812-13, this Court stated: "Having made a choice not to attack the voluntariness of the confession at trial, the *defendant may not now, long after the final stage of the direct litigation has passed, claim and exercise the option of having all that followed that decision set aside and ignored.* This the defendant seeks to do so that he may now have the second privilege of interposing a delayed and untimely objection in the hope of achieving a more favorable result. To permit a litigant to knowingly disregard the procedural requirement of timely objection would indeed disrupt the orderly and expeditious adjudication of penal accusations and would defeat the legitimate state interest. Cf. Commonwealth ex rel. Harbold v. Myers, 417 Pa. 358, 207 A. 2d 805 (1965) (post-trial waiver)." (Emphasis added).

Alternatively, appellant is precluded from raising the illegal arrest claim because he did not assert it in his direct appeal filed April 29, 1966, *after* the effective date of the PCHA. If Section 4 of the PCHA has any applicability at all to this case, it is with regard to appellant's failure to raise the issue in his *post-PCHA* direct appeal, not, as the other opinion claims, with regard to his failure to raise it in his pre-PCHA

---

[2] As the other opinion correctly notes, the decision not to pursue this issue was made as part of defense counsel's trial strategy.

pretrial motion. Appellant did not present this claim in his direct appeal, taken *after* the effective date of the PCHA, nor has he established "the existence of extraordinary circumstances to justify his failure to raise the issue."[3] By that failure he has waived the right to litigate that issue and is not eligible for relief. Act of January 25, 1966, P. L. (1965) 1580, §3, 19 P.S. §1180-3 (Supp. 1972).

Appellant's illegal arrest claim should be decided on either of the above grounds. The conclusion embodied in the other opinion, however, is based on a ground which is not only unrelated, but also unsupported.

Therefore, I am compelled to express my disagreement with the other opinion's assertion that the waiver provision of Section 4 of the PCHA applies to appellant's "failure to raise by pretrial motion in *1965* the question of the legality of his arrest." (Emphasis added). The other opinion erroneously relies on Section 4 in concluding that an issue, not raised in a pretrial motion *made before the effective date of the PCHA,* has been waived under that statute for purposes of post-conviction relief.

This Court has made it quite clear that Section 4 of the PCHA has no applicability whatsoever to proceedings initiated before March 1, 1966, the effective date of the Act. *Commonwealth v. Melton,* 449 Pa. 223, 296 A. 2d 727 (1972); *Commonwealth v. Norman,* 447 Pa. 217, 285 A. 2d 523 (1971); *Commonwealth v. Butler,* 442 Pa. 476, 276 A. 2d 536 (1971); *Commonwealth v. Cannon,* 442 Pa. 339, 275 A. 2d 293 (1971). In *Commonwealth v. Cannon,* supra at 342, 275 A. 2d at 294-95, we recognized that the waiver provisions of the Act do not—and, indeed, could not—"apply retro-

---

[3] Act of January 25, 1966, P. L. (1965) 1580, §4, 19 P.S. §1180-4 (Supp. 1972).

actively to habeas corpus proceedings instituted prior to the effective date of the Act."[4] Recently, in *Commonwealth v. Melton,* supra, we relied on *Cannon* in refusing to apply the waiver provisions of Section 4 to direct appeals filed prior to the effective date of the PCHA. There, the Court stated:

". . . the Post Conviction Hearing Act did not become effective until March 1, 1966. Before 1966, there

---

[4] In *United States ex rel. Faison v. Brierley,* 329 F. Supp. 988 (E.D. Pa. 1971), the federal court also recognized that following our decision in *Commonwealth v. Cannon,* 442 Pa. 339, 275 A. 2d 293 (1971), the Section 4 waiver provisions of the PCHA have no applicability to pre-PCHA habeas corpus proceedings. There, that court stated:

"Although we agree with the Pennsylvania Supreme Court that constitutional issues which have not been raised earlier may be waived in subsequent proceedings [see *Henry v. Mississippi,* 379 U.S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965)'], we find that the waiver provision in section 4 of the Post-Conviction Hearing Act has no applicability in the instant case for two reasons.

"*First: The Pennsylvania Supreme Court has, within the last few months, repudiated its previous decisions which held that the waiver provisions of section 4 apply to preclude raising issues which were not raised in previous state habeas corpus proceedings.* In Commonwealth v. Cannon, 442 Pa. 339, 275 A. 2d 293, 294-295 (filed March 25, 1971), the court stated: 'This Court in the past has held without discussion that the waiver provisions of the Post Conviction Hearing Act are fully retroactive. [citations omitted]. Upon further consideration of this matter, we believe that those decisions were ill-founded and now hold that the waiver provisions of the Act do not apply retroactively to habeas corpus proceedings instituted prior to the effective date of the Act.'

"*As a result of the Cannon decision, which was decided subsequent to relator's nunc pro tunc appeal, it is now apparent that if relator failed to raise the issue of the voluntariness of his confession at his state habeas corpus proceeding before Judge Hagan, that fact in no way precludes him from raising this issue on appeal to the Pennsylvania Supreme Court.* Thus, were it to have Faison's appeal before it today, the Pennsylvania Supreme Court would have decided relator's claim on the merits and found that his Jackson rights were violated." Id. at 990 (Emphasis added).

was no waiver doctrine either by statute or by case law. In 1961, when appellant pursued his direct appeal, failure to raise a claim involving a constitutional question on direct appeal was not grounds for denial of subsequent collateral relief of that claim by means of habeas corpus. See, e.g., Com. ex rel. Wilson v. Rundle, 412 Pa. 109, 194 A. 2d 143 (1963). Thus, appellant could have challenged for the first time in a habeas corpus proceeding his mental capacity to enter a voluntary and knowing guilty plea.

"For this reason we believe that this case is controlled by our decision in Commonwealth v. Cannon, 442 Pa. 339, 275 A. 2d 293 (1971). In Cannon, we held 'that the waiver provisions of the Act [Post Conviction Hearing Act] do not apply *retroactively* to habeas corpus proceedings instituted prior to the effective date of the Act.' Id. at 342, 275 A. 2d at 295 (emphasis supplied).

"Similarly, we hold that the waiver provisions of the Post Conviction Hearing Act do not apply to appeals filed prior to March 1, 1966." *Commonwealth v. Melton,* supra at 226-27, 296 A. 2d at 729.

Thus, it is well settled that the waiver provisions of the PCHA have no applicability to proceedings initiated *before* the effective date of the Act. Notwithstanding this decided and reaffirmed principle, the other opinion seeks to apply the Section 4 waiver provisions to *pre-PCHA* pretrial motions. This is an unnecessary effort and is also contrary to our prior decisional law. See *Commonwealth v. Melton,* supra; *Commonwealth v. Norman,* supra; *Commonwealth v. Butler,* supra; *Commonwealth v. Cannon,* supra

Mr. Chief Justice JONES and Mr. Justice O'BRIEN join in this opinion.