656 A.2d 476

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Demetrius CULL, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1994.

Decided March 28, 1995.

---

Jules Epstein, Philadelphia, for D. Cull.

Catherine Marshall, Karen A. Brancheau, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

CASTILLE, Justice.

The two related issues raised in this appeal from the order of the Superior Court reversing the order of the Philadelphia Court of Common Pleas granting a new trial are (1) whether a third-party witness' testimony regarding appellant's co-defendant's statements incriminating appellant were admissible at trial, and (2) whether appellant's trial counsel rendered ineffective assistance for failing to object to the admission of the third party's testimony regarding appellant's co-defendant's statements. For the reasons set forth below, we find that the Superior Court properly reversed the trial court's grant of appellant's motion for a new trial because the statements made by appellant's co-conspirator were properly admitted at trial and, therefore, trial counsel was not ineffective for failing to object to their admission.

Following a joint jury trial in the Philadelphia County Court of Common Pleas, appellant Cull and his co-defendant, Anthony Smith, were convicted of First–Degree Murder,[1] Criminal Conspiracy[2] and Possession of an Instrument of Crime.[3] However, a post-verdict, pre-sentence motion for a new trial was filed by new counsel and granted by the trial court on the basis that trial counsel had been ineffective for failing to object to the admission of certain of appellant's co-defendant's statements incriminating appellant in the crimes charged.

The Commonwealth appealed the trial court's grant of a new trial to the Superior Court. The Superior Court in a unanimous panel opinion found that co-defendant Smith's statements were admissible into evidence pursuant to the co-conspirator exception to the hearsay rule because they were made in furtherance of the conspiracy existing between appel-

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 903.
3. 18 Pa.C.S. § 907.

lant and Smith. *Commonwealth v. Cull*, 418 Pa.Super. 23, 32–33, 613 A.2d 12, 16–17 (1992). Having so found, the Superior Court then reversed the order of the trial court on the basis that trial counsel was not ineffective for failing to object to properly admitted evidence. *Id.*, 418 Pa.Super. at 33, 613 A.2d at 17. *See Commonwealth v. Smith*, 490 Pa. 380, 390, 416 A.2d 986, 990–991 (1980) (defense counsel cannot be deemed ineffective for failing to object to admission of properly admitted rebuttal testimony). Appellant filed a Petition for Allowance of Appeal of the Superior Court's order with this Court, which was granted. *Commonwealth v. Cull*, 535 Pa. 613, 629 A.2d 1376 (1993).

The evidence admitted at trial established that on September 13, 1988, the body of Sharon Smith was found in the basement of 248 North Wanamaker Street in Philadelphia. The victim had been shot once in the head with a .32 caliber Smith and Wesson firearm. A neighbor who lived in the rowhouse next door to 248 North Wanamaker Street testified that on Saturday, September 10, 1988, at approximately 8:00 a.m., she heard sounds of a scuffle and an argument coming from 248 North Wanamaker Street. The neighbor also heard the shouts and screams of male voices and one female voice come from both the first and second floors of the house. The neighbor heard the female voice scream, "Help me, help me, please," shortly after which the shouts and screams abruptly stopped. Both appellant and his co-defendant were identified as the residents of the 248 North Wanamaker Street rowhouse. Several other witnesses testified that co-defendant Smith sold crack cocaine from the rowhouse, while appellant Cull often acted as a lookout for police activity.

About thirty minutes after the victim's pleas for help were heard, another neighbor saw both appellant Cull and co-defendant Smith exiting 248 North Wanamaker Street. The two conspirators immediately drove to a nearby destination in the 100 block of Wanamaker Street, where they spoke to Faye Cherry, co-defendant Smith's former girlfriend. Witness Cherry testified that Smith instructed her not to tell anyone

that she knew him if she was questioned, and also said he was leaving town.

Witness Cherry further testified at trial that, in appellant's presence, co-defendant Smith told her that "we just shot this fiend in the head and left her in the basement." Smith told Cherry that they murdered their victim simply "because we wouldn't give her no drugs and she threatened to call the cops." Appellant Cull then interjected "I shot the bitch because she scratched me in my face." Ms. Cherry testified that consistent with appellant Cull's inculpatory statement, she observed scratches on his face. Before departing, Smith made certain that Cherry possessed no photographs of him from which he might be identified and requested her telephone number so that he could keep himself informed as to "what's going on down here."

Fitzroy Lewis, one of Smith's drug suppliers, testified that Smith telephoned him at about 9:00 a.m. on the very same morning of the victim's untimely demise, advising Mr. Lewis that he and appellant Cull were going to close the "crack house" and leave town. Apparently Smith had come to the realization that the aforementioned murderous deed would adversely affect their ongoing drug operation. Mr. Lewis testified that in explanation for their sudden move, Smith stated that he and appellant had just killed Sharon Smith because "she was giving some problem." Smith described to Mr. Lewis how he and appellant Cull had dragged her down to the basement and beaten her, that appellant Cull had shot her at Smith's direction, and that, after cleaning up the blood, the two men packed their belongings and left the house for the purpose of permanent relocation. Smith then asked Lewis to recommend a hotel where he and appellant could stay until nightfall, after which they could then travel to New York under the cloak of darkness. Smith telephoned Lewis several days later to say that he was in New York, but would soon be heading south.

According to Mr. Lewis' testimony, Smith admitted to him that he had purchased a .32 caliber handgun several weeks before the murder. Lewis also testified that the night before

the murder, he observed appellant Cull test-firing a handgun into the air outside 248 North Wanamaker Street. Police found several spent cartridges outside 248 North Wanamaker Street that matched the caliber of bullet which killed Sharon Smith.

The medical examiner's autopsy revealed that the victim had been struck by a single bullet in the left side of her head, which had pierced the skull and entered the brain. The medical examiner's conclusion was that the cause of death, to a reasonable degree of medical certainty, was the gunshot wound to the head.

After searching fruitlessly for Smith for over three months, police finally located him in a North Carolina jail after which he was extradited to Philadelphia. At the time of his arrest, Smith gave a statement to the Philadelphia police placing himself at the scene of the crime but pinning the blame on appellant Cull for the murder. After four months of searching for appellant Cull, the police eventually captured him hiding in the closet of a house in Columbia, South Carolina.

At a joint trial for Smith and appellant Cull, the Commonwealth introduced the admissions of appellant Cull and co-defendant Smith to Faye Cherry and Fitzroy Lewis pursuant to the co-conspirator exception to the hearsay rule without any defense objection. Neither appellant nor co-defendant Smith testified at trial.

■ The first issue raised for this Court's consideration is whether co-defendant Smith's statements to Faye Cherry and Fitzroy Lewis incriminating appellant Cull were admissible against Cull. Appellant cites *Bruton v. United States*, 391 U.S. 123, 135–136, 88 S.Ct. 1620, 1627–28, 20 L.Ed.2d 476 (1968), for the proposition that the Confrontation Clause of the Sixth Amendment to the United States Constitution forbids the use of a non-testifying co-defendant's statements as evidence against the defendant in a criminal trial. Appellant argues that *Bruton* prohibits the introduction of any of his co-defendant's statements because his co-defendant chose not to take the stand at their joint trial.

In *Bruton,* the issue was whether statements of a co-defendant made outside the presence of the appellant to a postal inspector while the co-defendant was in jail were admissible in the appellant's and co-defendant's joint trial. The trial court admitted the third party's testimony regarding the co-defendant's statements and instructed the jury that the co-defendant's statements had to be disregarded in determining appellant's guilt. The Supreme Court of the United States, however, held that the co-defendant's out-of-court statements, secured in a police setting and outside the presence of appellant, were not admissible since admission thereof would violate the appellant's right to cross-examination under the Confrontation Clause of the Sixth Amendment. The Supreme Court emphasized that such statements were inherently unreliable and were not such that a jury could ignore them in its deliberations despite the trial court's limiting instruction.

However, two years after *Bruton* was decided, the Supreme Court held in *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219–20, 27 L.Ed.2d 213 (1970), that a criminal defendant's constitutionally-guaranteed right to confront an adverse witness is not violated whenever the declarations of a non-testifying co-defendant possess strong indicia of reliability. In *Dutton,* the trial court permitted a prosecution witness to testify (pursuant to a Georgia statute allowing the admission of statements made in concealment of conspiracy), that an alleged accomplice, who was not tried with the appellee, stated to him while they were both in prison that had it not been for appellee, "we wouldn't be in here now." The Court of Appeals reversed the trial court finding that admission of the statement violated appellee's right to confrontation under the Sixth Amendment. The Supreme Court, however, reversed the court of appeals holding that the out-of-court statement was admissible since it bore indicia of reliability that fully warranted its placement before the jury.

The Supreme Court recognized, as has this Court, that "the Sixth Amendment right of an accused to confront a witness against him is a fundamental right made obligatory to the states by the Fourteenth Amendment." *Id.* at 80, 91 S.Ct. at

215 (*citing Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965)). However, it further noted that simply because evidence is admitted in violation of a hearsay rule, the court is not required to automatically conclude that the evidence was admitted in violation of the defendant's constitutional confrontation clause rights. *Dutton v. Evans,* 400 U.S. at 81–82, 91 S.Ct. at 215–16 (*citing California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970). The "mission of the confrontation clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *Id.* at 89, 91 S.Ct. at 220 (citation omitted). The Supreme Court further noted that statements which are spontaneous and against one's penal interest possess the requisite indicia of reliability which have been widely viewed as determinative of whether the statement may be placed before the jury even though there is no confrontation of the declarant. *Id.* at 88–89, 91 S.Ct. at 219–20. Finally, in determining whether the confrontation clause has been violated, the Supreme Court stated that a key inquiry to be made by the reviewing court is whether cross-examination would have shown the jury that the statement was not reliable. *Id.* In applying these principles, the Supreme Court held that the witness' statement regarding the statement made by the alleged accomplice incriminating appellee did have indicia of reliability since it was spontaneously made and against the witness' penal interest. The Supreme Court further found that in view of the overwhelming evidence provided by nineteen prosecution witnesses, which included a detailed account by an eyewitness, that cross-examination would not have shown the jury that the statement was unreliable. Hence, the admission of the hearsay statement was not found to have violated appellee's right to confront the witnesses offering evidence against him. *Accord Commonwealth v. Coccioletti,* 493 Pa. 103, 425 A.2d 387 (1981).[4]

---

4. In *Coccioletti,* this Court determined that there is no Confrontation Clause violation from the admission of a co-defendant's out-of-court

Here, Faye Cherry testified that on the morning of the homicide, co-defendant Smith told her that "we just shot this fiend in the head and left her in the basement" simply "because we wouldn't give her no drugs and she threatened to call the cops." Co-defendant Smith gave these statements in appellant Cull's presence no more than an hour following the murder; appellant offered no objection to or denial of the statement but rather angrily interjected "I shot the bitch because she scratched me in my face." Indeed, Ms. Cherry testified that she observed scratches on appellant's face corroborating his statements to her regarding his participation in the crimes.

With respect to Smith's statements to Fitzroy Lewis, Smith, again in Cull's presence, told Lewis that appellant had shot the victim since she was causing them problems, that they were leaving town, and that they needed a hotel room until they could escape to New York. Smith's statements were corroborated by appellant's own statements as well as the testimony of Deborah Coleman, the witness who lived next door to the place in which the victim's body was found and who testified that she heard sounds of a scuffle and an argument and then abrupt silence coming from 248 North Wanamaker Street at the same time at which, per Smith's admissions, the co-defendants were engaged in a altercation with the victim prior to killing her.

As in *Dutton*, there was overwhelming evidence that Smith's statements to Cherry and Lewis were reliable. First, the statement made by Smith to Cherry and Lewis were spontaneous and they were against Smith's penal interest (*see Commonwealth v. Porter*, 449 Pa. 153, 164, 295 A.2d 311, 316

statement incriminating appellant where sufficient indicia of reliability exists and where the statements are admissible pursuant to some recognized exception to the hearsay rule. 493 Pa. at 112–113, 425 A.2d at 391–392. The Court found the statements inherently reliable on the basis that the statements were made (1) soon after the homicide; and (2) against the speaker's own penal interest. *Id.* The Court also determined, pursuant to *Dutton*, that the statements were admissible pursuant to the co-conspirator exception to the hearsay rule and pursuant to the exception admitting implied admissions of a silent and acquiescing accused. *Id.*

(1972) (statements possessed the requisite indicia of reliability which derived from being spontaneous and against the penal interest of the declarants)); and appellant failed to deny the statements even though they were made in his presence (*see Coccioletti, supra,* 493 Pa. at 112–13, 425 A.2d at 391–92 (1981) (when an incriminating statement naturally calling for a denial made in the presence of the accused, is not challenged by the accused although he has the opportunity to deny the statement, the statement and the accused's failure to deny it are admissible as implied admissions of the truth of the statement)).[5] Furthermore, given that appellant himself gave a statement to Cherry that he had committed the crimes for which he was convicted, the "mission" of the Confrontation Clause would not have been served because cross-examination would not have shown the jury that the statement was unreliable or untruthful. *California v. Green, supra,* 399 U.S. at 161, 90 S.Ct. at 1936. Accordingly, we hold that admission of co-defendant Smith's statements to Cherry and Lewis did not violate the Confrontation Clause.

 Furthermore, these statements were admissible pursuant to the co-conspirator exception to the hearsay rule. This exception allows statements by a co-conspirator to be admitted against an accused if the statements are made

5. The justification of this rule is to be sought in the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt. *Commonwealth v. Vallone,* 347 Pa. 419, 421, 32 A.2d 889, 890 (1943). Its probative force is derived not from the credibility of the accuser but from the silence of the accused in response to it. *Id.* This rule is not applicable in criminal cases where the defendant is in police custody or in the presence of police officers because a contrary policy would effectively vitiate a defendant's constitutionally-guaranteed right against self-incrimination. *See Commonwealth v. Dravecz,* 424 Pa. 582, 227 A.2d 904 (1967) (implied admissions by silence are inadmissible if occurring in police custody or presence because of the encroachment upon constitutional protections against self-incriminating statements, overruling in part *Commonwealth v. Vallone, supra*). *But see Commonwealth v. Schmidt,* 452 Pa. 185, 299 A.2d 254 (1973) (implied admissions made while free from police custody or presence are admissible into evidence). Here, appellant Cull rendered his inculpatory statement only in the presence of his co-defendant Smith and Commonwealth witness Faye Cherry. Accordingly, there is no danger of a constitutional violation on these grounds.

during the conspiracy, in furtherance thereof, and where there is in other evidence of the existence of the conspiracy. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981). Although generally once the conspiratorial objective is accomplished, the out-of-court declarations of a conspirator cannot be used as evidence against his co-conspirators (*Commonwealth v. Ransom*, 446 Pa. 457, 461–462, 288 A.2d 762, 764 (1972)), there are instances in which statements made after the perpetration of the target crime are admissible because they are so closely connected to the commission of the substantive offense that they may reasonably be considered part of a continuing course of criminal conduct emanating from the substantive offense. *See Dreibelbis, supra*, 493 Pa. 466, 426 A.2d 1111 (the object of the conspiracy, a murder, did not terminate the conspiracy, and in their flight and their efforts to conceal their identities, the conspirators acted in furtherance thereof, thereby providing no obstacle to the admission of certain co-conspirator's inculpatory statements). *See also Coccioletti, supra*, 493 Pa. at 112–113, 425 A.2d at 391–392 (declarations made in the course of concealing evidence and in furtherance of the common design of evading capture are admissible pursuant to the co-conspirator exception to the hearsay rule).

Here, Fitzroy Lewis testified that he had a telephone conversation with co-defendant Smith approximately an hour after the murder. During that conversation, Smith told Lewis that he and appellant Cull had just acted together to kill a woman and that he and Cull had both attempted to clean up and remove their belongings from the crack house which they operated following the shooting. Lewis further testified that Smith told him that they made the joint decision to close down their drug operation so that they could leave town in a hurry and escape detection. Further, Smith then asked Lewis to recommend a hotel where he and appellant could both stay until nightfall, after which they could then travel to New York under the cloak of darkness.

This evidence demonstrated that Smith and appellant Cull were engaged in jointly secreting evidence of the murder and acting jointly to escape detection and apprehension. Co-

defendant Smith's statements shed light on both the nature and execution of the conspiracy in that they concerned the details of the killing itself as well as the two conspirators' motives behind the killing. Also, Smith's statements formed the basis of the co-conspirators' joint efforts to avoid detection by the police. These statements to Lewis were therefore properly admitted at trial. The Superior Court properly reversed the trial court's grant of a new trial.

■■■ Even without regard to whether these statements were admissible, however, appellant's related claim that his trial counsel was ineffective for failing to object to the admission of these statements is without merit. A criminal defendant sustains a claim of ineffectiveness of counsel only if he proves: (1) that the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to his prejudice. *See Commonwealth v. Edmiston*, 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993) (citation omitted). Trial counsel may not be deemed ineffective in cases in which the defendant cannot demonstrate that he was prejudiced from his trial counsel's performance. *Id.*

■■ Here, appellant himself admitted that he "shot the bitch because she scratched me in my face." Consistent with this admission, Cherry observed scratches on appellant's face. Therefore, given appellant's own incriminatory statement and the other overwhelming evidence in this case demonstrating appellant's guilt, no prejudice occurred as a result of the admission of co-defendant Smith's statements to Cherry and Lewis. *See Commonwealth v. Peterkin*, 538 Pa. 455, 464, 649 A.2d 121, 125 (1994) (capital murder defendant did not receive ineffective assistance of counsel when his attorney failed to object to prosecution's closing argument because any prejudice from those remarks was outweighed by overwhelming other evidence of guilt).[6] Appellant's asserted ineffectiveness

6. Appellant also asserts a *Bruton* violation and trial counsel ineffectiveness for counsel's failure to object to Faye Cherry's statement that co-defendant Smith telephoned her approximately one and one-half months following the murder and told her that appellant Cull was solely

claim is therefore without merit and appellant is not entitled to a new trial.

As U.S. Supreme Court Justice Cardozo wrote in *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934):

> There is danger that the criminal law will be brought into contempt ... if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.

291 U.S. at 122, 54 S.Ct. at 338.

The statements of co-defendant Smith having not violated the Confrontation Clause and having not caused any prejudice to appellant, provides no basis for disturbing appellant's convictions. Accordingly, we hereby affirm the Superior Court's reversal of the trial court's grant of a new trial, and remand the matter to the trial court for proceedings consistent with this opinion.

PAPADAKOS, J., did not participate in the decision of this case.

responsible for the crime. Upon close examination of the record, however, we note that Ms. Cherry gave this particular statement to a defense investigator a few days before her in-court testimony and that it was co-defendant Smith's counsel who read this statement into evidence. N.T. 320–330. We also note from our review of the record that defense counsel read the statement into evidence not to assert the purported truth of the statement, but to impeach Ms. Cherry's credibility and consistency regarding Smith's statements to her. *Id.* As such, the truth-determining mission of the confrontation clause is not implicated and no *Bruton* violation occurred. *See Dutton, supra,* 400 U.S. at 81–82, 91 S.Ct. at 215–16 (the mission of the confrontation clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials). *See also Tennessee v. Street,* 471 U.S. 409, 413–414, 105 S.Ct. 2078, 2081–82, 85 L.Ed.2d 425 (1985) (defendant's rights under the confrontation clause not violated by the introduction of an accomplice's confession for nonhearsay purposes). Further, we believe no claim of trial counsel ineffectiveness may lie on this point on the basis of our finding herein that trial counsel's failure to object to the admission of any of Smith's statements was not prejudicial to appellant's case in light of appellant's own explicit admission of guilt and the

176

FLAHERTY, J., files a concurring opinion in which NIX, C.J. and ZAPPALA, J., join.

CAPPY, J., concurs in the result.

MONTEMURO, J., is sitting by designation.

FLAHERTY, Justice, concurring.

I concur in the result reached by the majority. I would affirm the conviction simply because the witness testimony in question was admissible and there was, therefore, no ineffectiveness in failing to object to its admission. The court's discussion concerning lack of prejudice and overwhelming evidence is dicta.

NIX, C.J., and ZAPPALA, J., join this concurring opinion.

other meaningful evidence of guilt. *See Peterkin, supra,* 538 Pa. 455, 649 A.2d 121.