J-S34035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MYANNH LEGETTE | : | |
| | : | |
| Appellant | : | No. 389 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 17, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000731-2019

BEFORE:    DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED: FEBRUARY 7, 2022**

Myannh Legette (Appellant) appeals from the judgment of sentence entered in the York County Court of Common Pleas following his jury convictions of first-degree murder, second-degree murder, robbery, and conspiracy.[1]  Appellant challenges: (1) the trial court's admission of hearsay under the exception for a co-conspirator's statement made "during and in furtherance of the conspiracy," Pa.R.E. 803(25)(E); and (2) the sufficiency of the evidence for all of his convictions.  We affirm.

## I.  Facts & Procedural History

Appellant was charged, along with alleged co-conspirators Rahmeire Bradshaw and Zane Senft, with the robbery and shooting death of Tyler Owens

---

[1] 18 Pa.C.S. §§ 2502(a), (b), 3701(a)(1)(i), 903, respectively.

(the Victim) during a marijuana sale. As Appellant now raises a claim of insufficient evidence, we review in detail the relevant evidence presented at trial.

Brian Merrick testified to the following: around 12:00 a.m. on October 7, 2018, Appellant, also known as "Milo," sent him a text message through the "Facebook messenger" phone app, seeking an ounce or two of marijuana.[2] N.T. Trial, 11/16-18/20, at 193, 195-96. Brian thus arranged for Appellant to buy marijuana from his friend, the Victim. *Id.* at 197. Brian twice asked if he could go along, but Appellant declined. *Id.* at 198, 200. Appellant asked whether the Victim had a gun, and Brian replied he did not. *Id.* at 201-02. At 1:11 a.m., Appellant told Brian he made contact with the Victim. *Id.* at 203.

Rahmeire, Appellant's alleged co-conspirator, testified to the following: he, Appellant, and Zane lived together with Zane's mother, Kerri Holtzapple. N.T. Trial at 245. On the night of October 7, 2018, the three men were with a group of friends at the home of Jason Martinez. *Id.* at 234. The group sought to buy marijuana and "start[ed] looking on [their] phones," and Appellant "found somebody." *Id.* at 235. Appellant said he was "going to rob this" person, but Rahmeire thought Appellant was joking. *Id.* at 235-36.

---

[2] Brian testified he had known Appellant for "a couple months," and they were "friendly" and communicated through Facebook. N.T. Trial at 192.

Ultimately, Rahmeire, Appellant, and Zane went to a Turkey Hill store to meet the seller, the Victim. *Id.* at 236-37. Zane drove his car, Appellant sat in the front passenger seat, and Rahmeire sat behind Appellant. *Id.* at 237. On the way, Appellant used Zane's phone to send text messages. *Id.* at 238. "Zane start[ed] yelling at" Appellant, asking him "why he asked if [the seller] had a gun." *Id.* at 237-38.

When the group arrived at Turkey Hill, Rahmeire further testified, the Victim entered the rear seat of the car, sitting next to Rahmeire, while Zane exited the car to use the ATM machine. N.T. Trial at 238-39. Appellant, who was in the front passenger seat, brandished a gun and told the Victim to "kick that shit out." *Id.* at 239. The Victim threw two bags of marijuana, a scale, and his phone on the floor. *Id.* Appellant told Rahmeire to search the Victim, but Rahmeire did not. *Id.* at 240. Appellant directed the Victim to leave the car, and the Victim complied. *Id.* Appellant then exited the car and ran to the back of the vehicle to confront the Victim. *Id.* at 240, 269. Rahmeire heard Appellant say, "[H]e's reaching, he's reaching," and heard a gunshot. *Id.* at 240. On cross-examination, Rahmeire confirmed he did not see the gunshot, but heard the gunshot. *Id.* at 269.

Rahmeire further testified that he moved to the driver's seat, Appellant and Zane both got into the rear seat, and Rahmeire "put the car in reverse" and drove away. N.T. Trial at 241-42. They discussed "getting rid of the gun" and returned to Jason's house. *Id.* at 242. Jason used his minivan to drive

the trio to the home of Zane's mother's boyfriend so that they could use Zane's mother's car. *Id.* at 242-43. Zane, Rahmeire, and Appellant then drove Zane's mother's car to Baltimore, Maryland, where they sold the gun to a friend of Rahmeire's brother. *Id.*

West Manchester Township Police Officer Lance Krout and York City Police Officer Joseph Palmer responded, separately, to the scene of the shooting. N.T. Trial at 104-05, 124. When they arrived, the Victim was alive. *Id.* at 107. Both officers testified that when asked who shot him, the Victim responded, "It's the last number on my phone." *Id.* at 108, 125. The Victim sustained a single gunshot to his back and died. Trial Ct. Op., 4/27/21, at 2. Surveillance video showed a person walking from "possibly . . . the ATM area" to a car and the car "back[ing] out in a rush and [taking] off[.]" N.T. Trial at 129. The police learned this car was registered to Zane. *Id.* at 120-21.

Finally, we note that Kerri Holtzapple, Zane's mother, told the police the following: at 3:00 a.m. on October 7, 2018, Zane called her, asking to borrow her car. N.T. Trial at 333. At that time, Kerri was at her boyfriend's house, and Zane, Appellant, and Rahmeire arrived there sometime after 3:30. *Id.* at 334. Zane, who appeared to be "very upset," told Kerri that "Milo shot someone." *Id.* at 335-36. The three men then left in her car. *Id.* at 337.

Following police investigation, Appellant was charged with murder in the first and second degree, robbery, and conspiracy to commit robbery. Rahmeire and Zane were charged with murder of the second degree and

- 4 -

related offenses.[3]  *See* N.T. Trial at 248; Commonwealth's Motion *in Limine* at 1.

The Commonwealth filed a pre-trial motion *in limine*, seeking admission of, *inter alia*, the statement Zane made to his mother, that "Milo shot" the Victim.[4]  The Commonwealth contended the statement was made in furtherance of a conspiracy and thus admissible under the co-conspirator hearsay exception.  *See* Pa.R.E. 803(25)(E) (a statement "made by the party's coconspirator during and in furtherance of the conspiracy," "offered against an opposing party[,]" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness").

_____

[3] The Commonwealth filed notice to consolidate all three co-defendants' cases, but subsequently filed a motion to sever Rahmeire's case, which the trial court granted.  Although the record does not include a similar order severing Zane's case, Appellant's charges alone proceeded to the underlying jury trial.

[4] The Commonwealth also sought the admission of the Victim's statement to police, that the person who shot him was "the last person in his phone." Commonwealth's Motion *in Limine*, 11/13/20, at 2, *citing* Pa.R.E. 804(b)(2) ("The following [is] not excluded by the rule against hearsay if the declarant is unavailable as a witness: . . . [a] statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.").  At oral argument on the Commonwealth's motion, Appellant conceded the statement was admissible.  N.T. Trial at 7.

We note Appellant had also filed an omnibus pre-trial motion, on April 31, 2019.  He sought only to suppress statements he made to police before he was advised of his ***Miranda*** rights.  *See Miranda v. Arizona*, 384 U.S. 436 (1966).  The Commonwealth agreed these statements should be suppressed.  Order, 7/31/19.

On November 16, 2020, the trial court heard argument on the Commonwealth's motion *in limine* immediately prior to trial.[5]  The court observed that Zane made the statement to his mother — that "Milo shot" the victim — when the three co-defendants "had not yet completed the process" of "hindering apprehension."  N.T. Trial at 9.  Appellant did not challenge this finding, but instead objected on the ground that he was not present when Zane made the statement.  ***Id.*** The court questioned whether the co-conspirator hearsay exception required his presence when the statement was made.  ***Id.***  In response, Appellant argued "it goes to the issue of [whether] the statement itself is reliable."  ***Id.*** at 10.  Appellant then drew a distinction between Zane "directly say[ing] Milo shot someone" and Zane "telling [his mother] things that made [her] draw the conclusion that he was trying to tell [her] that Milo shot someone."  ***Id.***  The court ruled the statement was admissible.  ***Id.***

The case immediately proceeded to a jury trial, where the Commonwealth presented the evidence as summarized above.  Rahmeire testified as a Commonwealth witness against Appellant; Senft did not appear.  Zane's mother, Kerri, testified that when Zane arrived to take her car, he told

_____

[5] We note, however, the trial court also issued a written order granting the Commonwealth's motion, dated November **10**, 2020, and stamped as "filed" November **12th**.  Meanwhile, the Commonwealth's motion was stamped as "filed" and docketed on November **13th**.

her "Milo shot someone." N.T. Trial at 336. Appellant did not present any evidence or testify in his defense. ***See id.*** at 485.

The jury found Appellant guilty of first-degree and second-degree murder, robbery, and conspiracy to commit robbery. On February 17, 2021, the trial court imposed an aggregate sentence of life imprisonment without parole. Appellant filed a timely post-sentence motion, which the court denied on March 10th. Appellant filed a timely notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## II. Statement of Questions Involved

Appellant presents two issues for our review:

1. Did the trial court abuse its discretion in denying . . . Appellant's motion for judgment of acquittal challenging the trial court's admission of witness Kerri Holtzapple's hearsay testimony and the guilty verdicts on the charges of Murder in the First Degree, Murder in the Second Degree, Robbery and Criminal Conspiracy to Commit Robbery?

2. Did the trial court abuse its discretion in denying the Appellant's motion for judgment of acquittal challenging the sufficiency of the evidence and the guilty verdicts on the charges of Murder in the First Degree, Murder in the Second Degree, Robbery and Criminal Conspiracy to Commit Robbery?

Appellant's Brief at 4.

## III. Admission of Hearsay Under Co-conspirator Exception

For ease of review, we first note:

"When reviewing a trial court's denial of a motion *in limine*, this Court applies an [ ] abuse of discretion standard of review." "An abuse of discretion will not be found based on a mere error of

judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will."

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). It is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Rules of Evidence.

Rule 803(25)(E) provides an exception to the hearsay rule for a statement that a party's co-conspirator makes during and in furtherance of their conspiracy. Pa.R.E. 803(25)(E). For this exception to apply, the trial court must first find the existence of a conspiracy between the party testifying and the declarant, and second, that the declarant made the statement to the party testifying during the course of their conspiracy and in furtherance of the conspirators' common design. Stated another way, both the declarant and the party testifying must have been part of a conspiracy when the declarant made the statement, and the statement must have been made in furtherance of the conspiracy.

*Commonwealth v. Harrington*, 262 A.3d 639, ___ (Pa. Super. 2021) (some

citations omitted).

The Pennsylvania Supreme Court has explained:

Although generally once the conspiratorial objective is accomplished, the out-of-court declarations of a conspirator cannot be used as evidence against his co-conspirators, there are instances in which statements made after the perpetration of the target crime are admissible because they are so closely connected to the commission of the substantive offense that they may reasonably be considered part of a continuing course of criminal conduct emanating from the substantive offense.

*Commonwealth v. Cull*, 656 A.2d 476, 481-82 (Pa. 1995) (citations

omitted).

In this appeal, Appellant avers the trial court erred in admitting Kerri's

testimony that Zane told her, "Milo shot someone." *See* N.T. Trial at 336. He

- 8 -

avers none of the three requirements for the co-conspirator hearsay exception were met.[6]  First, Appellant contends the Commonwealth failed to establish a conspiracy to rob and murder the Victim, and instead, the evidence merely showed "Appellant's friends agreeing to purchase marijuana from" the Victim. Appellant's Brief at 15.  Second, Appellant argues, even if there were a conspiracy to rob and murder the Victim, there was no evidence of a conspiracy to "coverup" the robbery and murder.  *Id.* at 15-16.  Thus, Appellant reasons, even if Zane's statement were made "during the coverup of the principal objective," it was made "after the principal objective was completed" and after the conspiracy concluded.  *Id.*  at 15.  Finally, Appellant asserts, the statement was not made in furtherance of any conspiracy to rob and kill the Victim, as those events had already passed.  *Id.* at 16.  Instead, the statement "was simply a narrative statement" about "a past event."  *Id.* Appellant concludes he was prejudiced by the admission of the statement.  *Id.* at 17.

The Commonwealth argues Appellant has waived these particular arguments for failure to present them before the trial court.  Commonwealth's Brief at 29.  The Commonwealth points out Appellant had raised a different

---

[6] In his post-sentence motion, Appellant also averred he was not "able to confront the purported [speaker, Zane,] at trial."  Appellant's Motion for Post-Sentence Relief, 2/26/21, at 2 (unpaginated).  However, on appeal he does not pursue this claim.

legal theory against the admission of the statement. *Id.* Appellant does not respond to this allegation of waiver. We agree with the Commonwealth.

This Court has stated:

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This requirement bars an appellant from raising "a new and different theory of relief" for the first time on appeal.

*Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) (some citations omitted). In *Phillips*, the defendant challenged, in the trial court proceedings, the admission of out-of-court statements "on the basis of relevance and hearsay." *Id.* On appeal, however, he argued for the first time that the statements were inadmissible as evidence of a prior bad act. *Id.* This Court concluded the defendant was "improperly attempting to raise a new theory of relief for the first time on appeal," and thus had waived it for appellate review. *Id.*

Here, as stated above, at oral argument before the trial court, Appellant challenged the admission of Zane's statement on two grounds: (1) he (Appellant) was not present when Zane made the statement; and (2) it was questionable whether Zane directly stated, "Milo shot [someone,]" or instead told his mother "things that made [her] draw the conclusion that he was trying to tell [her] that Milo shot someone." N.T. at 9-10. Appellant did not raise the theory he now presents on appeal — that the statement did not meet any of the requirements of co-conspirator hearsay exception. Accordingly, it is waived. *See Phillips*, 141 A.3d at 522.

In any event, even if Appellant had preserved his issue for appellate review, we would conclude no relief is due. Contrary to Appellant's claim that there was no evidence of any conspiracy to "coverup" the robbery and shooting, Rahmeire testified at trial that after the shooting, he, Appellant, and Zane discussed "getting rid of the gun" and twice changed cars: first getting a ride in Jason's minivan, then taking Zane's mother's car. *See* N.T. Trial at 242-43. The trial court specifically found Zane's statement to his mother "was made in furtherance of the conspiracy, as the co-conspirators were in the process of concealing evidence.[ ]" Trial Ct. Op. at 6, *see also Cull*, 656 A.2d at 482 ("[S]tatements made after the perpetration of the target crime [may be] admissible because they are so closely connected to the commission of the substantive offense that they may reasonably be considered part of a continuing course of criminal conduct emanating from the substantive offense."). We would conclude the court did not abuse its discretion in admitting the statement. *See Harrington*, 262 A.3d at ____.

## IV. Sufficiency of the Evidence

In his second issue, Appellant challenges the sufficiency of the evidence supporting all of his convictions. We first consider the following relevant authority:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to

- 11 -

human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations omitted).

We further note a weight of the evidence challenge must be preserved before the trial court:

Under Pa.R.Crim.P. 607(A), a claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial: 1) orally, on the record, at any time before sentencing; 2) by written motion at any time before sentencing; 3) or in a post-sentence motion. *See* Pa.R.Crim.P. 607(A).

*Commonwealth v. Walsh*, 36 A.3d 613, 622 (Pa. Super. 2012).

We note the statutory definitions of Appellant's crimes. "A criminal homicide constitutes murder of the first degree when it is committed by an

- 12 -

intentional killing." 18 Pa.C.S. § 2502(a). "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). "A person is guilty of robbery if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another[.]" 18 Pa.C.S. § 3701(a)(1)(i). Conspiracy is defined as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1)-(2).

With respect to first- and second-degree murder and robbery, Appellant avers the evidence was insufficient to prove he was the individual who killed the Victim. He reasons: "The only evidence that [he] killed [the Victim] came from [Zane's] inadmissible statement to his mother and Rahmeire['s] testimony." Appellant's Brief at 18. Appellant further asserts "[t]he eyewitness testimony is inconsistent with the physical evidence[,]" which showed he was not even present at the shooting. *Id.* To this end, Appellant emphasizes his "fingerprints were not found in the car[,]" and "[g]unshot residue was primarily found on Zane . . . and his clothes[.]" *Id.* at 19. Finally

- 13 -

with respect to his conspiracy conviction, Appellant contends the Commonwealth failed to prove he entered into an agreement with others to commit robbery, nor the existence of a shared criminal intent. *Id.* at 21. We conclude no relief is due.

First, we note Appellant conflates the sufficiency and the weight of the evidence. He acknowledges there **was** evidence showing he committed robbery and murder: Rahmeire's trial testimony, as well as Kerri's testimony that Zane told her, "Milo shot someone." *See* Appellant's Brief at 18. Thus, to the extent Appellant avers the Commonwealth's evidence was "inconsistent," or that some of the evidence should not have been believed, these claims go to the weight of the evidence, and are waived for failure to raise them below.[7] *See* Pa.R.Crim.P. 607(A)(1)-(3); *Walsh*, 36 A.3d at 622.

While Appellant's remaining arguments — that the physical evidence did not establish his presence at the crime — do go to the sufficiency of evidence, we conclude no relief is due. Again, Appellant concedes Rahmeire's trial testimony was "evidence that Appellant killed" the Victim. *See* Appellant's Brief at 18. We reiterate that Rahmeire testified that during the marijuana sale, Appellant: brandished a gun; directed the Victim to throw the marijuana

---

[7] Appellant's post-sentence motion instead raised a claim "based on the sufficiency of the evidence," arguing "the evidence did not establish his presence at the time of the murder nor his knowledge that the victim was going to be robbed and ultimately killed." Appellant's Motion for Post-Sentence Relief at 2-3.

on the floor; and after the Victim exited the car, ran to the back of the car to confront the Victim. *See* N.T. Trial at 239-40. Rahmeire heard Appellant say, "[H]e's reaching, he's reaching," and heard a gunshot. *Id.* at 240. The Victim sustained a fatal gunshot to his back. Trial Ct. Op. at 2. The Victim told responding officers that the person who shot him was listed as "the last number on [his] phone." N.T. Trial at 108, 125.

The trial court aptly found the jury was free to accept Rahmeire's testimony as credible, as well as the other witnesses' testimony and surveillance video, which corroborated Rahmeire's testimony. *See* Trial Ct. Op. at 9. With respect to Appellant's contention the evidence was insufficient to show he knew the Victim would be killed, the trial court correctly reasoned: (1) such knowledge is not an element of either first- or second-degree murder; and (2) Appellant was not charged with conspiracy to commit murder, and thus "[p]roof of prior knowledge of what would happen to [the Victim] was not required." *See* 18 Pa.C.S. § 2502(a)-(b); Trial Ct. Op. at 7, 9-10.

Finally, with respect to conspiracy to commit robbery, Appellant ignores Rahmeire's testimony that before the incident, Appellant and others discussed robbing the victim. N.T. Trial at 235-36. Also, another trial witness, Hannah Wilson, testified she heard Appellant, Rahmeire, and Zane talking about putting a "lick" on the victim, which meant robbing him. *Id.* at 297-98. The men also told Wilson she could not go with them to meet the victim. *Id.* at

298.    Accordingly, Appellant's sufficiency of the evidence challenge is meritless.

## V. Conclusion

In sum, we conclude no relief is due on Appellant's challenges to the admission of hearsay and the sufficiency of the evidence.  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2022